## A08A2110. ROBINSON v. THE STATE.
### (675 SE2d 298)

BARNES, Judge.

Following a jury trial, Russell Lenardis Robinson was found guilty of conspiracy to traffic marijuana, attempt to traffic marijuana, and possession of a firearm during the commission of a felony. Robinson pursued and was granted an out-of-time appeal, following which he filed, and later amended, a motion for new trial. He now appeals the denial of that motion for new trial, challenging the sufficiency of the evidence and the trial court's failure to give his requested charge on entrapment. Following our review, we affirm.

Upon this Court's review of a criminal defendant's challenge to the sufficiency of the evidence supporting a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ulti-

---

mate facts. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001).

So viewed, the evidence reveals that a confidential informant ("CI") informed a Hall County police officer assigned to the Multi Agency Narcotics Squad that he had made contact with someone concerning the sale of a large quantity of marijuana. The officer testified that the operation was known as "a reverse" in that "[w]e're looking for somebody who's wanting to purchase large quantities of any illicit drug or illegal drug. In this case . . . [the officer] was the seller of a large quantity of marijuana, that being 80 to 100 pounds." On the evening of May 12, 2005, the officer spoke with the CI on his cell phone and Robinson and Clarence Heard were with the CI at a local restaurant's parking lot. The officer spoke with Heard, and the men agreed that Heard would pay $65,000 for 100 pounds of marijuana, and that they would call him later that day to make the transaction.

Later that night, the CI called the officer when the men were en route to the same parking lot. The CI was waiting in a car in the parking lot, and police were posted at various locations in the vicinity. At approximately 10:00 p.m. Robinson drove up in a Chevrolet Avalanche with Heard as his passenger. Another car with two passengers followed Robinson's vehicle. The second car circled the parking lot conducting "counter-surveillance," and parked about 40 feet away from where Robinson and the CI were parked. Heard, who was carrying a black bag, got into the car with the CI, then got out of the car and put the black bag into the second vehicle. The undercover officer, who was wired, approached the CI's car and spoke with Heard about the transaction, and after Heard showed him the money, he showed Heard the marijuana. The officer then signaled for the other officers to move in for the arrest. Police discovered a Glock nine millimeter pistol tucked in between the driver and passenger seats of Robinson's truck, and electronic scales with evidence of marijuana residue.

At trial, the arresting agent testified that, after being advised of his *Miranda* rights, Robinson said that

> the CI approached him on the job and began talking about having a contact that could sell large amounts of marijuana. Robinson stated he thought he could make a little money by setting the only person up he knew with the subject to purchase the marijuana. The only subject he knew that dealt drugs was his cousin, Clarence Heard.

Robinson, who worked as a truck driver, testified that another driver, the abovementioned CI, approached him in May 2005, and asked if he knew anyone who wanted to buy a large quantity of marijuana. Robinson testified that he did not know the CI before that day, and that he told the CI that he did not know anyone who "deals with it." Robinson testified that the men exchanged telephone numbers because the CI said that he had a second truck that Robinson might be interested in purchasing. Robinson said the CI called him later that day, and several times over the next few days to ask him about the marijuana. Robinson testified that the CI offered a finder's fee and it "kept going up" until the CI offered him $2,000. Robinson testified that he was "entrapped ... with the money" because he was "behind on bills, house note, and child support." He said that he contacted Heard, who was his cousin, and told him about the marijuana, called the CI and told him about Heard, and set up the meeting at the restaurant. Robinson testified that he was with Heard during the actual transaction because the CI said that he would not get his finder's fee until he saw the money, and that Heard rode with him instead of in the second car because "he's my cousin. I [had not] seen him in a while." Robinson said he did not contribute any money to buy the marijuana. The CI did not testify at trial.

1. Robinson first argues that the evidence is insufficient to convict because the State failed to rebut his prima facie showing of entrapment. We disagree.

"A person is not guilty of a crime if, by entrapment, his conduct is induced or solicited by a government officer or employee, or agent of either, for the purpose of obtaining evidence to be used in prosecuting the person for commission of the crime." OCGA § 16-3-25.

> In Georgia, the entrapment defense consists of three distinct elements: (1) the idea for the commission of the crime must originate with the state agent; (2) the crime must be induced by the agent's undue persuasion, incitement, or deceit; and (3) the defendant must not be predisposed to commit the crime."

(Citations and punctuation omitted.) *Bacon v. State*, 188 Ga. App. 782 (1) (374 SE2d 351) (1988). "When a defendant raises this defense and testifies to it at trial, it is the State's burden to disprove the defense beyond a reasonable doubt." (Citation omitted.) *Wilcox v. State*, 229 Ga. App. 227, 229 (1) (493 SE2d 724) (1997). Evidence of entrapment may be rebutted by other evidence when a confidential informant does not testify. *Finley v. State*, 214 Ga. App. 452, 453-454 (1) (448 SE2d 78) (1994).

However, a person is not entrapped simply because he has been given an opportunity to commit a crime. See *Paras v. State*, 247 Ga. 75, 77 (2) (274 SE2d 451) (1981). Even though in this case, the CI initiated contact with Robinson, there is no entrapment unless the CI, acting on behalf of the State, used undue persuasion, incitement, or deceit to induce him to commit a crime he was not predisposed to commit. See *Heath v. State*, 240 Ga. App. 492, 493-494 (2) (522 SE2d 761) (1999).

Here, the evidence might have been more persuasive if the CI knew Robinson before the crime and was aware of his financial problems. This does not appear to be the case. Robinson's own internal struggles regarding his financial circumstances were unknown to the CI and could form no basis for any undue persuasion or incitement. Nor is there any evidence that Robinson was not predisposed to commit the crime. According to the record, the initial conversation happened on Wednesday and Robinson arranged for his cousin to purchase the marijuana two days later. Robinson also initiated contact with the CI on at least one occasion; he talked with the CI on several occasions; he never attempted to dissuade the CI from contacting him; and he was present at each meeting between the men without apparent coercion or threats.

"From this evidence, the jury could have concluded that [Robinson's] actions were not consistent with those of a person being coerced into committing a crime." *Urapo-Sanchez v. State*, 267 Ga. App. 113, 115-116 (1) (598 SE2d 850) (2004). Because the trial evidence did not present a prima facie case of entrapment, the trial court properly denied Robinson's motion for a new trial.

2. Likewise, for the reasons discussed in Division 1, Robinson's claim that the trial court erred in not charging the jury on the defense of entrapment is without merit.

If all of the elements of an affirmative defense are raised by the evidence, the trial court is required to charge the jury on the defense. *Ellzey v. State*, 272 Ga. App. 253, 257 (1) (612 SE2d 77) (2005). While there was evidence that the idea for the crime originated with the CI, unlike the facts in *Ellzey*, here there was no evidence that Robinson was persuaded by or that the CI used any "undue persuasion, incitement, or deceit" to induce Robinson to arrange the transaction, or that he was not so predisposed. The evidence shows that Robinson "acted to 'pick up some extra money.' The informant merely furnished the opportunity." *Campbell v. State*, 281 Ga. App. 503-504 (1) (636 SE2d 687) (2006).

Accordingly, the trial court did not err in failing to charge the jury on entrapment.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED MARCH 11, 2009.

*Kristin I. Jordan*, for appellant.
*Lee Darragh, District Attorney, John G. Wilbanks, Jr., Assistant District Attorney*, for appellee.